# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL PEREZ, individually and on behalf of other members of the general public similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>WINNCOMPANIES, INC., and WINN MANAGEMENT GROUP,<br><br>　　　　　　Defendants. | Case No.: 1:14-cv-01497 - LJO - JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO THE KERN COUNTY SUPERIOR COURT<br><br>(Doc. 5) |

Plaintiff Paul Perez seeks a remand of this action to Kern County Superior Court, where he initiated this action by filing a complaint for wage and hour violations against WinnCompanies, Inc., and Winn Management Group (collectively, "Defendants"). (Doc. 5.) Defendants filed their opposition to the motion on October 24, 2014 (Doc. 10), to which Plaintiff filed a reply on October 31, 2014 (Doc. 11). The Court heard the oral arguments of the parties on November 7, 2014. Because Defendants failed to demonstrate that the amount in controversy exceeds the sum of $75,000, Plaintiff's motion to remand is **GRANTED**.

## I.     Factual and Procedural History

Plaintiff alleges was employed by Defendants "in a salaried on-site position." (Doc. 1-1 at 9, ¶ 20.) He asserts Defendants "misclassified him as 'exempt' and paid him on a salary basis, from approximately June 2011 to approximately October 2013." (*Id.*) Plaintiff seeks to bring the action on

behalf of himself and all others similarly situated pursuant to California Code of Civil Procedure § 382. (*Id.* at 6, ¶ 14.) Thus, Plaintiff seeks to represent a class defined as: "All current and former California-based (i.e, currently 'residing' in California with the intent to remain in California indefinitely) salaried on-site employees employed by any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (*Id.* ¶ 15.)

Plaintiff contends that he "and the other class members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants," and that Defendants failed to compensate class members for all hours worked, missed meal periods and missed rest breaks. (Doc. 1-1 at 10, ¶¶ 26-30.) Specifically, Plaintiff raises the following nine causes of action for wage and hour violations against Defendants: (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 201 and 202 (final wages not timely paid); (5) violation of California Labor Code § 204 (wages not timely paid during employment); (6) violation of California Labor Code § 226(a) (non-compliant wage statements); (7) California Labor Code § 1174(d) (failure to keep requisite payroll records; (8) violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses) and (9) violation of California Business & Professions Code §§17200, *et seq.* (unfair competition/unfair business practices). (*See* Doc. 1-1 at 3.)

On September 26, 2014, Defendants filed a Notice of Removal asserting the Court has diversity jurisdiction over the action, thereby initiating the action in this Court. (Doc. 1.) Plaintiff filed the motion to remand now pending before the Court on October 6, 2014. (Doc. 5.)

**II.     Removal Jurisdiction**

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987). Specifically,

> Except otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331.

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading. *Id.* at § 1446(b). Removal statutes are to be strictly construed, *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683-85 (9th Cir. 2006); *see also Calif. ex. rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute"). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

Recently, the Ninth Circuit determined "the proper burden of proof imposed upon a defendant to establish the amount in controversy requirement is the preponderance of the evidence standard." *Rodriguez v. AT&T Mobility Services, LLC*, 728 F.3d 975, 976 (9th Cir. 2013).[1] This standard requires a defendant to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional threshold]." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204 (E.D. Cal. 2008) (quoting *Sanchez v. Mon. Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (emphasis omitted). Thus, Defendant has the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $75,000 for Plaintiff's claims.

### III.     Defendant's Calculations in the Notice for Removal

In the Notice of Removal, Defendants contend the Court has diversity jurisdiction because the parties are diverse and "[i]t can be reasonably ascertained from the pleadings and the prayer for relief that the amount in controversy does, in fact, exceed $75,000." (Doc. 1 at 2, 7). According to Defendants, their good faith estimate of the amount in controversy totals $247,474.28, which includes wage damages of $17,464.48; penalties in the amount of $5,009.80; and attorney fees totalling $225,000.00. (*Id.* at 7-10).

---

[1] Although Plaintiff argues Defendants have the burden to prove with a "legal certainty" that the amount in controversy exceeds $75,000, each of the district court cases upon which Plaintiff relies were issued prior to the Ninth Circuit's determination in *Rodriguez*.

3

Defendants report Plaintiff earned $9.11 per hour for the 118 weeks between June 10, 2011 and October 18, 2013. (Doc. 1 at 7.) To calculate the amount in controversy, Defendants determined his overtime rate was $13.67 per hour and assumed "Plaintiff worked five hours of overtime per week for 118 weeks," which totalled $8,065.30 in unpaid overtime. (*Id.* at 7-8.) Also, Defendants assumed Plaintiff missed four meal periods per week and two rest periods per week, which placed $6,449.88 in controversy. (*Id.* at 8.) Defendants report the penalties for failure to pay all wages due at the time of discharge total $2,459.80 and civil penalties under Cal. Labor Code § 226(e) total $2,550.00 (*Id.*) Because Plaintiff alleges Defendants failed to reimburse vehicle maintenance, Defendants assumed "he was not reimbursed for $25 in costs per week" for his 118 weeks of employment, which totalled $2,950.00. (*Id.* at 9.)

In, addition Defendants observe that the Court must consider the value of the injunctive relief Plaintiff seeks, including compliance with Cal. Labor Code § 226; "appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants;" and compliance with Cal. Bus. & Prof. Code § 17200. (Doc. 1 at 9) (citing *In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011), *cert granted in part*, 534 U.S. 1126 (2002); *cert. dismissed*, 537 U.S. 1 (2002)). Although Defendants did not "quantif[y] the costs of compliance with any such injunction," they note the injunctive relief "would increase the amount in controversy." (*Id.*)

Finally, Defendants note attorney fees are included in the calculations to determine the Court's jurisdiction where, as here, an underlying statute authorizes an award of fees. (Doc. 1 at 9) (citing *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998)). Defendants observe that "[a]ttorneys' fees can be significant in wage hour cases." (*Id.* at 9-10) (citing, *e.g.*, *Lippold v. Godiva Chocolatier, Inc.*, 2010 U.S. Dist. LEXIS 47144, *8-11 (N.D. Cal. 2010); *Martin v. The Old Turner Inn*, 2003 W.L. 22416020 (Cal. Superior Court 2003); *Bandoy v. Huh*, 1996 W.L. 675975 (Cal. Superior Court 1996)). Defendants "expert Plaintiff's counsel will bill at least 500 hours." (*Id.* at 10.) Defendants note that a recent decision from the Eastern District indicated Plaintiff's counsel "bills between $300 and $600 per hour, with Mr. Aiwazian billing at $600 per hour." (*Id.* at 10) (citing *Cagle v. C & S Wholesale Grocers, Inc.*, 2014 U.S. Dist. Lexis 21571 at *29-30 (E.D. Cal. Feb. 19, 2014)). Thus, Defendants assume "an average rate of $450 an hour," which places a total of $225,000.00 in controversy. (*Id.*)

Given the calculations above, Defendants conclude the preponderance of the evidence demonstrates "the amount in controversy in this matter exceeds the jurisdictional minimum of $75,000.00." (Doc. 1 at 11.)

**IV.     Plaintiff's Motion to Remand**

Plaintiff does not dispute that the parties are diverse, but questions the calculations Defendants made to determine the amount in controversy. Plaintiff asserts that Defendants relied upon unsupported assumptions and "simply picked numbers out of thin air in order to arrive at the amount in controversy." (Doc. 5 at 6-7.) Plaintiff notes, "Defendants did not provide Plaintiff's work schedules, timecards, or any other records which ostensibly could support these bar assertions." (*Id.* at 6.) Further, Plaintiff contends the declarations of James Aliberti are not proper evidence because Mr. Aliberti did not explain his calculation methods. For example, Plaintiff asserts that he was paid on a salary basis, yet Mr. Aliberti made calculations based upon an hourly rate of $9.11, without explaining how this rate was calculated. (*Id.* at 8.) In addition, Plaintiff argues Defendants failed to explain the use of 118 workweeks to determine the amount in controversy, because "[i]t is unknown whether these are the number of actual workweeks Plaintiff worked" and "is unclear whether Defendants adjusted for sick days, vacation days, or other leaves of absence." (*Id.*) As a result, Plaintiff asserts the "calculations for unpaid overtime and meal and rest period premiums must be rejected." (*Id.*)

In addition, Plaintiff contends Defendants' waiting time calculations should be rejected by the Court "because Defendants provide no evidence to support [the] assumption that Plaintiff worked 8.6 hours every day." (Doc. 5 at 9) (citing, *e.g.*, *Allen v. Utiliquest*, 2013 U.S. Dist. LEXIS 108948, *18 (N.D. Cal. July 26, 2013); *Negrete v. Petsmart*, 2013 U.S. Dist. LEXIS 31871, at *19-20 (E.D. Cal. Mar. 6, 2013). Similarly, Plaintiff argues the wage statement penalty calculations 'must be rejected" because "Defendants merely calculate the maximum amount of damages available for this claim." (*Id.*) Plaintiffs also urge the Court to reject Defendants' calculations of fees, arguing that "attorneys' fees in this putative class action cannot be attributed solely to Plaintiff for the purpose of determining the amount in controversy for traditional diversity jurisdiction." (*Id.* at 10) (citing *Kanter v. Warner-Lamber Co.*, 265 F.3d 853, 858 (9th Cir. 2001); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 941-42 (9th Cir. 2001); *Rodriguez v. Goodrich Corp.*, 2014 U.S. Dist. LEXIS 105883 *7 (E.D. Cal. Jul. 31, 2014)).

## V.     Discussion and Analysis

Opposing remand, "Defendants maintain that it is clear from the face of Plaintiff's complaint that the amount in controversy exceeds $75,000.00." (Doc. 10 at 7.)  They argue that Plaintiff's criticism of the calculations "should be rejected in their entirety" because "Plaintiff has provided no evidence whatsoever" of his overtime hours, and Defendants made "conservative calculations" regarding his claims.  (*Id.* at 8-9.)  Further, Defendants argue that the declarations of Mr. Aliberti are "sufficient at this state to prove the amount in controversy."  (*Id.* at 9-10) (citing *Ray Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123 (C.D. Cal. May 9, 2011); *Lewis v. Verizon*, 627 F.3d 395, 397 (9th Cir. 2010)). Thus, Defendant appear to argue that the declaration from Mr. Aliberti is competent evidence upon which the Court may rely.  Significantly, however, "a defendant must set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum." *Korn*, 536 F. Supp.2d at 1205 (citing *Gaus*, 980 F.2d at 567, emphasis added).

### A.     Unpaid overtime claim

Plaintiff alleges Defendants failed to pay overtime in violation of Cal. Labor Code §§ 510 and 1198.  (Doc. 1-1 at 13.) To determine this overtime claim placed $8,065.30 in controversy, Defendants assumed "Plaintiff worked five hours of overtime per week for 118 weeks between June 2011 and October 2013."  (Doc. 1 at 7.)  Defendants assert this "is a conservative calculation of the potential total amount in dispute," because Plaintiff alleged that he "regularly and/or consistently worked" overtime without compensation.  (Doc. 10 at 9, citing Doc. 1-1 at 12-14, ¶¶ 38, 52.)  Defendants argue, "To the extent that Plaintiff contends that he worked fewer overtime hours per week without compensation, he should provide evidence of the same."  (*Id.*) (citing *Fee v. Wal-Mart Stores, Inc.*, 2006 WL 3149366, *2-3 (D. Nev. Nov. 2, 2006)).

Importantly, the burden of proof is on Defendants—not Plaintiff.  Defendants fail to offer any explanation for their assumption that Plaintiff worked five hours of overtime per week.  As a result, the overtime calculations are speculative at best.  Recently, the Northern District of California rejected a defendant's valuation of a claim that assumed the plaintiff worked two hours of overtime per week. *Rivers v. Veola Transp. Servs.*, 2014 U.S. Dist. LEXIS 111705, at *7-9 (N.D. Cal. Aug. 11, 2014). Although the plaintiff alleged he was "regularly required to work in excess of eight (8) hours in a work

day and more than forty (40) hours in a workweek," the court found "[t]hat allegation … does not support Defendant's conclusion that such overtime occurred in the amount of 2 hours every week." (*Id.*, 2014 U.S. Dist. LEXIS 111705, at *9. The court explained, "Taken on its own terms, a natural reading of the Complaint does not allege that Plaintiff incurred overtime every week, much less in any particular amount." *Id.* On the other hand, one court determined it was appropriate for the defendant to assume "1 hour a week of overtime" when the assumption was "grounded in specific facts regarding [the] Plaintiff's work schedule and salary." *Patel v. Nike Retail Servs.*, 2014 U.S. Dist. LEXIS 98918, at *13-22 (N.D. Cal. July 21, 2014).

Here, Defendants do not explain why the assumption of five overtime hours per week is reasonable, or offer any facts to support the calculation related to Plaintiff's salary[2] and work schedule. Rather, the calculations Defendants make are similar to those criticized in *Rivers*. Plaintiff alleged he "regularly and/or consistently worked" overtime hours but there is no factual support for the assumption that the overtime occurred on a daily—or weekly—basis throughout the 118 weeks of his employment. Thus, Defendants have failed to show by a preponderance of the evidence that Plaintiff's overtime totalled five hours per week.[3]

### B. Meal and rest break claims

When an employer fails to provide a required meal or rest break, it is liable for one additional hour of pay at the aggrieved employee's regular rate of compensation. Cal. Lab. Code § 226.7. Here, Plaintiff alleges that "[a]t all material times set forth [in the complaint], Defendants failed to provide the requisite uninterrupted meal and rest periods to Plaintiff and the other class members." (Doc. 1-1 at 12, ¶ 38.) Defendants argue:

> Based on this unconditional contention, Plaintiff's Complaint could be read to allege that he is entitled to one hour of pay ***per workday*** for meal breaks that were not provided and for rest breaks that were not provided over the entire course of the 118 week period potentially applicable to Plaintiff's meal and rest break claim. Assuming five missed meal breaks per week and five missed rest breaks per week, the "amount in controversy" related to Plaintiff's meal break claim range would be $10,749.80.

---

[2] Presumably, Defendants divided Plaintiff's salary by 50—or 52—weeks per year and then divided this figure by 40 hours. Defendants do not explain that this is what they did or if this is how they arrive at the hourly figure, why this was a reasonable methodology.

[3] If only one hour of overtime per week is considered and assuming the hourly overtime rate is accurate, it appears the amount placed in controversy for lost overtime would be $1,613.06 ($13.67 X 1 hour per week X 118 weeks).

(Doc. 10 at 10, emphasis in original.) Defendants note, without explanation, that despite the fact they could have assumed Plaintiff missed meal and rest breaks every day, they "made a conservative estimate of Plaintiff's missed meal and rest breaks, calculating that he missed an average of four (4) meal periods and two rest periods per week, for a total amount in controversy of $6,449.88." (*Id.*, emphasis omitted.)

In *Garibay v. Archstone Cmtys. LLC*, the Central District rejected similar estimates provided by a defendant who assumed the plaintiff and putative class members "were deprived of one rest period per week" and "missed one meal period per week." *Id.*, 2013 U.S. Dist. LEXIS 188299 (C.D. Cal. Feb. 4, 2013), *affirmed* 539 Fed. App'x 763 (9th Cir. 2013.) The district court determined the defendant "failed to demonstrate that the Complaint supports this assumption and have not supported this assumption with evidence of its own." *Id.*, 2013 U.S. Dist. LEXIS 188299 at *15. Affirming the district court's decision, the Ninth Circuit noted:

> Archstone assumes that each class member was wrongly denied a break twice each week. As the district court correctly explained, Archstone failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than "one missed rest period per paycheck or one missed rest period per month."

*Garibay*, 539 Fed. App'x at 764. Likewise, the defendants here fail to offer any support for the assumptions that Plaintiff "missed an average of four (4) meal periods and two rest periods per week."[4] (*Id.* at 10.) Consequently, Defendants fail to carry their burden to show by a preponderance of the evidence that $2,459.80 is the amount in controversy for Plaintiff's meal and rest break claims.

### C. Waiting time claim

As an initial matter, it is not clear that Plaintiff has standing to bring a claim for failure to pay timely wages. Plaintiff alleges Defendants "intentionally and wilfully failed to pay *the other class members* who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." (Doc. 1-1 at 18, ¶ 79, emphasis added). However, Plaintiff also alleges that "Defendants failure to pay Plaintiff and the other class members … within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code

---

[4] For example, Defendant could have offered anecdotal evidence as to the number of hours a similarly situated employee works per week and the number of meal and rest breaks that are missed, if any.

8

sections 201 and 202." (*Id.* at 19, ¶ 80.) Importantly, a named plaintiff must have a "personal stake in the outcome" and be a member of the class which he seeks to represent. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). "A named plaintiff cannot represent a class alleging ... claims that the named plaintiff does not have standing to raise." *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) (citing *O'Shea*, 414 U.S. at 493-94). If Plaintiff was paid his final wages in a timely manner, he cannot state a claim on behalf of those who were not. Consequently, it is not clear that his complaint puts any damages in controversy for Defendants' alleged failure to pay timely final wages.

In any event, assuming Plaintiff has standing to pursue this claim, to calculate this amount, Defendant assumed Plaintiff was entitled to the maximum thirty-day penalty. (Doc. 1 at 8; Doc. 10 at 10.) However, the Ninth Circuit appears to have disapproved of the use of a 100% violation rate without evidentiary support. In *Garibay*, the Court observed:

> Garibay also alleges violations of Cal. Labor Code § 203, which provides that employers who fail to timely pay all earned wages upon termination are subject to a fine equal to the employee's normal wages for each day the wages are late, up to a maximum of 30 days. Archstone assumes that each employee would be entitled to the maximum statutory penalty, but provides no evidence supporting that assertion.

*Garibay*, 539 Fed. App'x at 764. Though the Court did not use the magic language "100% violation rate," the Court makes clear that a removing defendant *must* have evidence to support the assumptions made. This is consistent with the Court's ruling in *Gaus*, 980 F.2d at 567, which held that a removing defendant must set forth the underlying facts supporting its claim that the amount in controversy exceeds the statutory minimum.

On the other hand, it appears Defendants' calculations are premised upon the notion that Plaintiff asserts he is owed overtime wages and premium wages for missed meal periods and rest breaks. (*See* Doc. 1 at 8, ¶¶ 30-31.) Because under this theory, the alleged unpaid wages are owed even now to Plaintiff, the full thirty days of waiting time penalties is a proper measure and may be relied upon to calculate the amount in controversy. Consequently, Defendants have shown by a preponderance of the evidence—assuming Plaintiff has standing to bring this claim—that $2,459.80 is in controversy.

D.  **Wage Statement Penalties**

Plaintiff alleges Defendants "failed to provide accurate wage statements," and seeks penalties

9

pursuant to Cal. Labor Code § 226(e), which provides that an employee is "entitled to recover the greater of all actual damages for fifty ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) . . . for each violation in a subsequent pay period". (Doc. 1-1 at 28 ¶ 32-34; Cal. Labor Code § 226(e)(1). Defendants expect Plaintiff will request $50 for the initial violation and $100 for each subsequent violation. (Doc. 1 at 8.) "[S]ince Plaintiff was paid on a biweekly basis" and the claim is subject to a one-year statute of limitations, Defendants calculate that the amount in controversy includes 26 pay periods and a total of $2,550.00." (*Id.*)

Importantly, the word "subsequent" has a specific meaning under the California Labor Code. "Until the employer has been notified that it is violating a Labor Code provision . . . the employer cannot be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to penalties." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008). "However, after the employer has learned its conduct violates the Labor Code, the employer is on notice that any future violations will be punished just the same as violations that are willful or intentional—i.e., they will be punished at twice the rate of penalties that could have been imposed or that were imposed for the initial violation." *Id.*

Defendants' calculations are based upon the assumption that Plaintiff is entitled to the enhanced rate for "subsequent" violations for 25 of the 26 pay periods. However, Plaintiff does not assert that Defendants were notified any Labor Code violations prior to the filing of this lawsuit. Consequently, the Court cannot presume that Defendants were aware of the violations subject to the enhanced penalties.

### E. Claim for unreimbursed business expenses

In the Complaint, Plaintiff alleges that "Defendants regularly and consistently failed to reimburse Plaintiff and the other class members for business-related expenses and costs." (Doc. 1-1 at 13, ¶ 14.) He asserts Defendants did not reimburse "vehicle maintenance costs" to Plaintiff and the putative class members, in violation of Cal. Labor Code §§ 2800 and 2802. (*Id.* at 23, ¶¶ 101-03.) Calculating the amount in controversy for this claim, Defendants assumed they "failed to reimburse Plaintiff for vehicle maintenance costs per week for 118 weeks between June 2011 and October 2013." (Doc. 1 at 9.) As a result, Defendants assert this claim places $2,950.00 in controversy. (*Id.*)

Plaintiff asserts the Court should reject this calculation, because "Defendants provide no explanation as to why their estimate is reasonable." (Doc. 5 at 10.) The Court agrees. As Plaintiff observes, "Defendants could have just as easily chosen $5 or $50 in weekly expenses." (*Id.*) Further, Defendants fail to provide any factual support for their assumption that Plaintiff incurred vehicle maintenance costs on a *weekly* basis. Without any evidentiary support, the assumptions made by Defendants must be rejected by the Court. *See Garibay*, 539 Fed. App'x at 764; *see also Korn*, 536 F. Supp.2d at 1205 (requiring the removing party to identify underlying facts that support calculations made to demonstrate the amount in controversy).

### F. Plaintiff's request for punitive damages

Defendants observe that Plaintiff included a request for punitive damages in his prayer for relief, and "punitive damages are part of the amount in controversy in a civil action." (Doc. 1 at 9) (quoting *Coleman v. Assurant, Inc.*, 463 F.Supp.2d 1164, 1168 (D. Nev. 2006). Defendants do not identify the amount of punitive damages that may be awarded, but observe "most punitive damage verdicts against corporations exceed $75,000." (Doc. 10 at 13) (citing, *e.g., Dunn v. Allstate Ins. Co.*, 1997 WL 813002 at *2 (S.D. Cal. Dec. 15, 1997); *Richmond v. Allstate Ins. Co*. 897 F. Supp. 447, 451 (S.D. Cal. 1995)). Consequently, Defendants assert that "on the basis of punitive damages alone, Plaintiff has placed more than $75,000 in controversy." (*Id.*)

Significantly, the mere fact that a plaintiff includes a prayer for punitive damages is insufficient to meet the amount in controversy requirement. *Bigby v. DS Waters of Am. Inc.*, 2013 U.S. Dist. LEXIS 13856 at *10-11, (C.D. Cal. Jan. 30, 2013); *see also Lange v. State Farm Mut. Auto. Ins. Co.,* 2009 U.S. Dist. LEXIS 13679 at *2-3, (C.D. Cal. Feb. 9, 2009) (When the amount in controversy depends largely on alleged punitive damages, the court will scrutinize a claim . . . more closely than a claim for actual damages to ensure Congress's limits on diversity jurisdiction are properly observed" (citation omitted)). To demonstrate the amount in controversy is satisfied with the addition of punitive damages, a "defendant may introduce evidence of jury verdicts in cases involving analogous facts." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002). Here, Defendants fail to carry that burden.

Defendants fail to provide any jury verdicts for the Court's review, nor do Defendants identify cases with analogous facts in which punitive damages awards alone have met the amount in

controversy requirement. Defendants' conclusory statement that "most punitive damage verdicts against corporations exceed $75,000" is insufficient to satisfy its burden here. *See Soto* v. *Kroger Co.*, 2013 U.S. Dist. LEXIS 85823 at *12-13 (C.D. Cal. June 17, 2013) (rejecting the defendant's argument that punitive damages were available and satisfied the jurisdictional requirement where the defendant failed analogize facts from other cases or propose a reasonable amount of punitive damages). Although punitive damages may be awarded if Plaintiff succeeds on his claims, the Court declines to speculate as to the amount given Defendants' failure to meet their burden.

### G. Attorneys' fees

In the Notice of Removal, Defendants note Plaintiff seeks to recover attorneys' fees, which are "included determining the amount in controversy when, as in the case at hand, Plaintiff is claiming attorneys' fees pursuant to statute." (Doc. 1 at 9, citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)) Defendants assert:

> A recent decision from February, 2014, prosecuted by the same plaintiff's counsel as representing Plaintiff here, Lawyers for Justice, noted that this firm bills between $300 and $600 per hour, with Mr. Aiwazian billing at $600 per hour. *Cagle v. C & S Wholesale Grocers, Inc.*, 2014 U.S. Dist. Lexis 21571 at *29-30 (E.D. Cal. Feb. 19, 2014). That court found reasonable an estimate of at least 100 hours to prosecute a single plaintiff case making similar allegations of unpaid overtime, minimum wage, missed meal and rest breaks, and claiming the same violations of the Labor Code for alleged failure to timely pay all wages upon termination and supposedly incomplete and inaccurate wage statements. *Id.* (denying motion to remand). Here, Plaintiff will presumably seek a multiplier, or alternatively will seek a percentage of the recovery, which the Ninth Circuit has often established as 25%. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). With a putative class action, and at an average rate of $450 an hour, this Court can reasonably expect Plaintiff's counsel to bill at least 500 hours, and to seek a multiplier.

(Doc. 1 at 10.) Consequently, Defendants conclude attorneys' fees in this action "will be at least $225,000." (*Id.*) Plaintiff argues these calculations are flawed because "pursuant to Ninth Circuit authority, attorneys' fees in this putative class action cannot be attributed solely to Plaintiff for the purpose of determining the amount in controversy for traditional diversity jurisdiction." (Doc. 5 at 10) citing *Kanter*, 265 F.3d at 858; *Gibson*, 261 F.3d at 941-42).

Specifically, the Ninth Circuit has determined that in a putative class action, attorneys' fees "cannot be allocated solely to [named] plaintiffs for purposes of amount in controversy," unless the statute in question authorizes an award of attorneys' fees "solely to the named plaintiffs in a class

12

action." *Gibson*, 261 F.3d at 942. In *Gibson*, Court determined a California statute authorizing an award of fees "to a successful party" did not satisfy that condition, compared to a Louisiana statute awarding fees to "the representative parties" in a class action did satisfy that condition. *Id.* Soon thereafter, the Ninth Circuit held that "potential attorneys' fees [could not] be attributed solely to the named plaintiffs for purposes of amount in controversy," where the statute in question authorized an award of attorneys' fees "to a prevailing plaintiff." *Kanter*, 265 F.3d at 858. In *Gibson* and *Kanter*, the Ninth Circuit reasoned that, in a putative class action, attributing attorneys' fees solely to a named plaintiff for purposes of determining the amount in controversy would be improper, because the plaintiff would not ultimately be entitled to the entirety of that award upon a favorable disposition of the case. *Gibson*, 261 F.3d at 942; *Kanter*, 265 F.3d at 858.

Despite this, Defendants argue that Labor Code 1194 allows attorneys' fees to be awarded to the individual plaintiff. (Doc. 10 at 12) This statue reads, "any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action . . . reasonable attorney's fees . . ." Defendants offer no analysis as to why they believe this status comports with *Gibson* such to authorized attorney's fees to be awarded solely to the named plaintiff. Indeed, the language of 1194 is not that different from that considered in *Gibson* in which the statute allowed attorney's fees to be awarded to a "successful party" (*Gibson*, 267 F.3d at 942) or in *Kanter* where the statute allowed the award to "a prevailing plaintiff" (K*anter*, 265 F.3d at 858).

Moreover, recently, this Court ruled that the language of Labor Code 1194 failed to satisfy the requirements of *Gibson* and *Kanter*. *Rodriguez v. Goodrich Corporation*, 2014 W.L. 3842904 at *3 (E.D. Cal. Aug. 1, 2014). The Court held,

> In the present case, Plaintiff would be entitled to attorneys' fees upon a favorable disposition of the matter. See Cal. Labor Code § 1194(a); Cal Labor Code § 226(e); Cal. Labor Code § 2699(g). However, the relevant sections of the California Labor Code do not authorize awards of attorneys' fees "solely to the named plaintiffs in a class action," but rather to "an employee" or "any employee" who prevails on his or her claim. Gibson, 261 F.3d at 942. Therefore, under *Gibson* and *Kanter*, attorneys' fees "cannot be allocated solely to [Plaintiff] for purposes of amount in controversy," but rather must be divided by the number of putative class members. *Gibson*, 261 F.3d at 942;see *Davenport v. Wendy's Co.*, 2013 WL 6859009 (E.D.Cal. Dec.24, 2013) (holding that, under CLC § 1194(a), § 226(e), and § 2699(g), the "estimate of potential attorneys' fees must be divided by the number of class members," for purposes of amount in controversy). As Defendants have not attempted to make such a calculation, their allegation that Plaintiff's attorneys' fees will amount to "$77,500–$220,000" is

conclusory, and insufficient to establish that the amount in controversy exceeds $75,000.

*Id.*

Just as in *Rodriguez v. Goodrich*, if successful on the merits of his claims, Plaintiff would be entitled to an award of attorneys' fees pursuant to Cal. Labor Code §§ 226(e) and 1194, and Cal. Code Civ. P. § 1021.5. However, these California Labor Code and California Code of Civil Procedure sections do not authorize awards of fees "solely to the named plaintiffs in a class action," but rather to "a successful party" and "an employee" or "any employee" who prevails on his or her claim." *See* Cal. Code Civ. P. § 1021.5; Cal. Labor Code §§ 226(e) and 1194. Thus, under *Gibson* and *Kanter*, attorneys' fees "cannot be allocated solely to [Plaintiff] for purposes of amount in controversy," but rather must be divided by the number of putative class members. *Gibson*, 261 F.3d at 942; *see also Davenport v. Wendy's Co.*, 2013 U.S. Dist. LEXIS 180437 at *5-6 (E.D. Cal. Dec. 24, 2013) (holding that under Cal. Labor Code §§ 226(e) and 1194(a), the "estimate of potential attorneys' fees must be divided by the number of class members" when calculating the amount in controversy).

Importantly, Defendants do not attempt to make a calculation for fees that may be allocated to Plaintiff alone.[5] However, even assuming Plaintiff's counsel worked at a rate of $450 (as Defendants assumed) for a total of 100 hours on Plaintiff's claims alone—which the Court found to be a reasonable amount of time in *Cagle*, 2014 U.S. Dist. Lexis 21571 at *29-30—the total of $45,000 is insufficient to raise the amount in controversy above the jurisdictional threshold.

### H. Injunctive relief

Defendants note that Plaintiff seeks injunctive relief to insure their compliance with California's wage and hour laws. However, since Plaintiff alleges that he is no longer employed by Defendants, he lacks standing to seek the requested injunctive relief. *See Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding former employee lacked standing to seek injunction requiring former employer to adopt anti-discriminatory policies.) Consequently, the injunctive relief has no

---

[5] Defendants question the fact that "Plaintiff provides no estimate of relative fees attributable to him," and argue the motion to remand "should fail simply because he submits no verified evidence that after accounting for attorneys' fees, he seeks less than $75,000 as to his individual claim." (Doc. 10 at 12.) However, the burden of proof is on Defendants to demonstrate the jurisdictional amount is satisfied, not on Plaintiff in seeking a remand. *See Dynegy*, 375 F.3d at 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute").

monetary value that may be attributed to Plaintiff.

## VI.     Conclusion and Order

When defendants rely upon "speculative and self-serving assumptions about key unknown variables," as Defendants did in this action, the Ninth Circuit has determined it is an error to find the defendants carried the burden to demonstrate the amount in controversy.  *See Garibay*, 539 Fed. App'x at 764.  By applying assumptions and failing to provide supporting evidence, Defendant's calculations are speculative and lack the summary judgment-type evidence contemplated to evaluate removal jurisdiction. *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004).  Consequently, the Court cannot find it has jurisdiction the amount in controversy requirement is satisfied.  However, as the Ninth Circuit explained in *Garibay*, if Defendants "later discovers evidence that the jurisdictional bar is met, [they] may once again attempt to remove this case to federal court." *Garibay*, 539 Fed. App'x at 764 (citing *Roth v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121 (9th Cir. 2013)).

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion to remand (Doc. 5) is **GRANTED**;
2. This matter is **REMANDED** to the Kern County Superior Court;
3. All remaining motions are terminated as **MOOT**; and
4. The Clerk of Court is **DIRECTED** to close this matter.

IT IS SO ORDERED.

Dated:   **November 7, 2014**              **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE